**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Virginia Sue Lindstrom,

Debtor.

Pingora Loan Servicing, LLC & LoanDepot.com, LLC,

Appellants,

v.

Cathy L. Scarver,

Appellee.

Case No. 1:19-cv-03979

Michael L. Brown
United States District Judge

______________________________/

# OPINION & ORDER

The Bankruptcy Judge granted the trustee of a bankruptcy estate summary judgment. (Dkt. 1-2.) Appellants Pingora Loan Servicing, LLC ("Pingora") and LoanDepot.com, LLC ("LoanDepot") appeal the Bankruptcy Judge's findings. (Dkt. 7.) The Court reverses the Bankruptcy Court's order and remands this case to the Bankruptcy Court to be continued under the guidance in this order.

## I. Leave to Appeal

Under 28 U.S.C. § 158(a), district courts have jurisdiction over appeals of bankruptcy court rulings upon a final judgment or an interlocutory appeal. The Bankruptcy Judge granted the Trustee summary judgment on only some issues in this case. Because one count remains, the Bankruptcy Judge's order was not a final judgment. (Dkt. 4-20 at 2.) A party can only file an interlocutory appeal with leave of the court.[1] § 158(a)(3). Leave to appeal is appropriate when the bankruptcy court's order involves a controlling question of law on which there is substantial ground for difference of opinion and resolution of the issue on appeal may materially advance the ultimate termination of the litigation. *See Blue Cross & Blue Shield v. First Am. Home Health*, No. 496-cv-183, 1997 U.S. Dist. LEXIS 21980, at *2 (S.D. Ga. Jan. 15, 1997).

[1] Under § 158(a)(2), a district court has jurisdiction to hear an appeal "from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title." That section does not apply here and so Appellants appeal under § 158(a)(3), which states that a district court has jurisdiction to hear appeals with leave of court.

Appellants say their appeal satisfies this standard and seek interlocutory appeal from the Bankruptcy Judge's order.[2] (Dkt. 4-20.) Appellee agrees with that assessment, (Dkt. 3 at 5), and so does the Court. The issues presented are close questions of law with substantial grounds for differences of opinion. The resolution of the issues will also materially advance the ultimate termination of the litigation. The Court thus grants Appellants' Motion for Leave to Appeal (Dkt. 4-20).

## II. Background

Most of the facts are not in dispute. In 2005, Virginia Sue Lindstrom bought a house in Lawrenceville, Georgia. (Dkt. 4-1 ¶ 8.) In 2010, she borrowed nearly $175,000 from Loan Depot and used the Lawrenceville house as collateral. (Dkt. 4-3.) To secure the debt, she executed a security deed ("Security Deed"). (*Id.*)

She signed the Security Deed as Borrower. (*Id.* at 23.) One unofficial witness, Dorothy Lindstrom, also signed the Security Deed. (*Id.*) On the page after the Lindstroms' signatures, the Security Deed

[2] Before transmitting the record to the district court, the bankruptcy clerk is supposed to wait until the district court has granted leave of the appeal. Fed. R. Bankr. P. 8010 ("[T]he bankruptcy clerk must prepare and transmit the record only after the district court . . . grants leave.").

has a notary acknowledgment section. (*Id.* at 24.) Elliott Braxton Smith, the closing attorney, signed there. (*Id.*) The Security Deed was recorded in Gwinnett County in August 2015. (*Id.* at 23.) Attached to the Security Deed, and recorded contemporaneously, was an Acknowledgment and Waiver of Borrower's Rights Rider ("the Rider"). (*Id.* at 26–27.) The Rider states on the first page that it is "incorporated into and shall be deemed to amend and supplement the . . . Security Deed." (*Id.* at 26.) The Rider includes a Closing Attorney's Affidavit ("the Affidavit").[3] (*Id.* at 28.)

The Affidavit is on the third page of the attached documents. (*Id.* at 28.) It states, "[i]n closing the above loan, but prior to the execution of the Security Deed and [Rider] by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed . . . . After said review with and

[3] The Security Deed states that two riders are attached. (Dkt. 4-3 at 12.) One of those Riders is an Acknowledgment Waiver Rider. (*Id.* at 26.) That Rider is attached to the Security Deed. The Trustee claims the Affidavit is not a part of the Rider and so the Affidavit is not attached to the Security Deed. The Court disagrees. The bottom of the Rider lists that it is one of three pages. (*Id.*) The Affidavit is the third page. (*Id.* at 28.) The affidavit is attached to the Rider and thus attached to the Security Deed.

explanation to Borrower(s), Borrower(s) executed the Security Deed and [Rider].” (*Id.*) Debtor, as well as Dorothy Lindstrom and Mr. Smith, signed the Rider. (*Id.* at 27.) Mr. Smith signed the Affidavit as the Closing Attorney, and Cory Borgerding signed and notarized it. (*Id.* at 28.)

In February 2017, Debtor filed for Chapter 7 Bankruptcy. (Dkt. 4-1 ¶ 4.) A month later, Cathy Scarver (“the Trustee”) was named the trustee for the bankruptcy estate. (*Id.* ¶ 5.) In November 2017, LoanDepot transferred the Security Deed to Pingora. (*Id.* ¶ 10.)

In September 2018, the Trustee sued Pingora and LoanDepot. (Dkt. 4-1.) The Trustee claimed the Security Deed had been improperly recorded and so the Trustee could avoid the secured interest of LoanDepot under 11 U.S.C. § 544. Under that statute, a party can avoid an obligation on a deed if the deed is defective. The Trustee argued, and Pingora and LoanDepot conceded, that the Security Deed was defective. (Dkt. 1-2 at 8.) Pingora and LoanDepot argued, however, that they had cured the defects by meeting the requirements of Georgia’s so-called Remedial Statute — a statute that allows parties to cure certain defects or errors in the recording of deeds. The Bankruptcy Judge found the

Remedial Statute applied but that Pingora and LoanDepot had not met its requirements. The Bankruptcy Judge granted the Trustee summary judgment. Pingora and LoanDepot appeal the Bankruptcy Judge's grant of summary judgment.

## III. Standard of Review

A district court reviews the appeal of a bankruptcy judge's conclusions of law de novo and its findings of fact for clear error. *See Club Assocs. v. Consol. Capital Realty Inv'rs*, 951 F.2d 1223, 1228–29 (11th Cir. 1992). Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party meets this burden merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, a court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, "[i]t is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

## IV. Discussion

### A. Overview

Under Section 544(a)(3) of the Bankruptcy Code, a bankruptcy trustee can avoid an obligation on a security deed if that deed is defective. 11 U.S.C. § 544(a)(3) ("The trustee . . . may avoid any transfer of property of the debtor . . . that is voidable by . . . a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."). "If a security deed is duly executed, filed, recorded, and indexed with the Clerk of the Superior Court of the appropriate county, recordation of the deed provides

constructive notice to the subsequent bona fide purchasers." *Kelley v. Wells Fargo, N.A.* ("*In re Perry*"), 565 B.R. 442, 444 (Bankr. M.D. Ga. 2017). "Recordation of a patently defective security deed does not provide constructive notice to subsequent bona fide purchasers and has no binding effect on such purchasers." *Id.*

Section 44-14-33 of the Georgia Code ("the Recording Statute") governs whether parties have properly recorded a deed. Under it, a properly recorded deed must have the signatures of two witnesses, one of them being a notary.[4] Only one witness, Dorothy Lindstrom, signed the Security Deed. Appellants conceded that the Security Deed was thus defective under the Recording Statute.

A party can cure a defective deed through compliance with Georgia's Remedial Statute which states,

> If a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness, which affidavit shall be made before any one of the officers named in

---

[4] That statute states, "[i]n order to admit a mortgage to record, it shall be signed by the maker, attested by an officer as provided in Code Section 44-2-15, and attested by one other witness. In the absence of fraud, if a mortgage is duly signed, witnessed, filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers." O.C.G.A. § 44-14-33.

> Code Section 44-2-15 and shall testify to the execution of the deed and its attestation according to law. A substantial compliance with the requirements of this Code section shall be held sufficient in the absence of all suspicion of fraud.

O.C.G.A. § 44-2-18. "In other words, an affidavit of a subscribing official witness must meet the following two-prong test to cure a defective security deed: (1) it must be made before a notary public or another officer as listed in O.C.G.A. § 44-2-15; and (2) it must testify to the execution and attestation of the security deed." *In re Perry*, 565 B.R. at 445.

There are two issues on appeal: (1) whether the Remedial Statute applies at all and, if so, (2) whether Mr. Smith's affidavit meets its requirements.

**B. Whether the Remedial Statute Applies**

The Remedial Statute states, "[i]f a deed is neither attested by nor acknowledged before one of the officers named in Code Section 44-2-15, it may be recorded upon the affidavit of a subscribing witness." O.C.G.A. § 44-2-18. Though Mr. Smith did not attest the Security Deed, he acknowledged it. The Bankruptcy Judge found that the Remedial Statute could apply under these facts. The Trustee argues that finding was in error. It says that, since Mr. Smith acknowledged the deed, the

Remedial Statute is inapplicable. This Court agrees with the Bankruptcy Judge.

The Georgia Code instructs courts interpreting statutes to "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." O.C.G.A. § 1-3-1(a). The Georgia Code also states, "[i]n all interpretations of statutes, the ordinary signification shall be applied to all words." § 1-3-1(b). The Georgia Supreme Court discussed the rules of statutory interpretation in *Federal Deposit Insurance Corp. v. Loudermilk*, 761 S.E.2d 332, 339–40 (Ga. 2014). The Court said,

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Id.* (citation omitted) (internal quotation marks omitted). The Court continued,

> In our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well. After all, context is a primary determinant of meaning. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question.

*Id.* (quoting *May v. State*, 761 S.E.2d 38 (2014)).

Considering the factors listed above, this Court agrees with the Bankruptcy Judge — the Remedial Statute applies. The Georgia Assembly modified the Recording Statute in July 2015. Before that, the Recording Statute permitted a deed to be recorded upon an attestation or an acknowledgment: "In order to admit a mortgage to record, *it must be attested by or acknowledged* before an officer as prescribed for the attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness." O.C.G.A. § 44-14-33 (2010) (emphasis added).[5] The Remedial Statute thus allowed a party to correct an error in either attestation or acknowledgment.

In the amended version of the Recording Statute, the Georgia Assembly removed acknowledgment as a way of properly recording a deed: "In order to admit a mortgage to record, it shall be signed by the maker, attested by an officer as provided in Code Section 44-2-15, and

---

[5] The amended Recording Statute became effective July 1, 2015. The Security Deed was executed on August 10, 2015, and recorded on August 19, 2015. (Dkt. 4-3 at 11–31.) The amended version of the Recording Statute thus applies.

attested by one other witness." O.C.G.A. § 44-14-33. The Georgia House Daily Report stated that the change "removes the acknowledgment provisions to clarify that only attestation will suffice in recording and executing mortgages." Ga. H.R. Daily Rep., 2015 Reg. Sess. No. 40 (April 7, 2015). The Georgia Assembly did not, however, modify the Remedial Statute. So the Remedial Statute still states that it applies if a deed is "neither attested by nor acknowledged before." O.C.G.A. § 44-2-18.

Before the Georgia Assembly modified the Recording Statute, in the situation here — with a deed that was acknowledged but not attested — the deed would have been properly recorded. Now, as Appellee would have it, a party could not cure that deed through the Remedial Statute. This Court — like the Bankruptcy Court — rejects that interpretation. The Georgia Assembly's failure to update the Remedial Statute in league with its change to the Recording Statute does not mean that the Remedial Statute is now inapplicable to deeds that omit the necessary attestation but were acknowledged. Such an interpretation would ignore the purpose of the Remedial Statue and how it was designed to work with the Recording Statute.

It would also read too much into the Georgia Assembly's failure to act. The Remedial Statute is a cure statute that operates with the Recording Statute to allow parties to cure improperly recorded deeds. *Gordon v. Terrace Mortg. Co.* ("*In re Kim*"), 571 F.3d 1342, 1345 (11th Cir. 2009) (noting "[t]he statute is remedial"). It is intended to allow parties to do exactly what they purported to do here — provide a missing attestation. To conclude that the Remedial Statute does not apply because that error included not only a missing attestation but also an outdated acknowledgment would ignore the purpose of the statute and how it fit into the Recording Statute when enacted. It would also ignore the history of the Recording Statute — specifically that is was enacted to cure errors in both ways that a deed could be witnessed/acknowledged. The history of the Recording Statute and the Remedial Statute suggests that the Georgia Assembly meant only to remove acknowledging as a way to record a deed. That silence does not suggest the Georgia Assembly meant to prohibit the cure of an improperly recorded deed that was acknowledged. Without an explicit instruction from the Georgia Assembly or a Georgia court, this Court finds that result inappropriate.

This Court finds the Remedial Statute applicable.

### C. Whether the Affidavit Satisfied the Remedial Statute

The Remedial Statute requires an "affidavit of a **subscribing witness** . . . testify[ing] to the execution of the deed **and** its attestation according to law." O.C.G.A. § 44-2-18 (emphasis added). The Georgia Code does not define subscribing witness. The Bankruptcy Judge used the 2019 Black's Law Dictionary to define a subscribing witness as "[s]omeone who witnesses the signatures on an instrument and signs at the end of the instrument to that effect." *Subscribing Witness*, BLACK'S LAW DICTIONARY (11th ed. 2019). She found two Georgia cases to support this definition. *See Gilliam v. Burgess*, 151 S.E. 652, 653 (Ga. 1930); *White v. Magarahan*, 13 S.E. 509, 510 (Ga. 1891). Appellants argue that definition is wrong because that statute was last amended in 1933 and a definition from 2019 would not apply to a statute amended in 1933. *See Weintraub v. State*, 836 S.E.2d 162, 170 (Ga. Ct. App. 2019) ("When looking for the generally understood or common meaning of a particular word, courts most often look to dictionary definitions."); *see also Warren v. State*, 755 S.E.2d 171, 172 (Ga. 2014) ("[W]e look to the ordinary meaning of those words at the time the General Assembly enacted the statute . . . .").

Appellants argue the Court should use the 1933 Black's Law Dictionary, which defines subscribing witness as "one who sees a writing executed, *or hears it acknowledged*, and at the request of the party thereupon signed his name as a witness." (emphasis added). *Subscribing Witness*, BLACK'S LAW DICTIONARY (3rd ed. 1933). Appellee responds that the statute was at first enacted in 1850, making a 1933 definition inapplicable. The Court agrees with Appellee — a better definition of Subscribing Witness is one that is contemporaneous to when the statute was enacted, not amended. The legal dictionaries closer to 1850, this Court has found, all state that a subscribing witness is equivalent to an attesting witness.

For instance, Bouvier's Volume II (1862) defines a subscribing witness as "[o]ne who subscribes his name to a writing in order to be able at a future time to prove its due execution; an attesting witness." *Subscribing Witness*, BOUVIER'S LAW DICTIONARY (Vol. II 1862). Archibald Brown's a New Law Dictionary (1874) defines a subscribing witness as "[h]e who witnesses or attests the signature of a party to an instrument and in testimony thereof subscribes his own name to the document." *Subscribing Witness*, ARCHIBALD BROWN'S A NEW LAW DICTIONARY (1874).

And A Dictionary of American and English Law (1888) defines a subscribing witness as "[h]e who witnesses or attests the signature of a party to an instrument, and in testimony thereof subscribes his own name to the document." *Subscribing Witness*, A DICTIONARY OF AMERICAN AND ENGLISH LAW (Vol. II 1888). So, a subscribing witness is the same as an attesting witness, meaning the subscribing witness must witness the actual execution of a paper, and subscribe one's name as a witness to that fact.[6] *See Gilliam*, 151 S.E. at 653 ("Attestation is the act of witnessing the actual execution of a paper, and subscribing one's name as a witness to that fact."). In effect, this is the definition the Bankruptcy Judge applied.

The Eleventh Circuit has determined that an attorney affidavit nearly identical to the one at issue here met all the requirements of Georgia's Remedial Statute — meaning it was an affidavit of a subscribing witness that testifies to the execution of the deed and its attestation. Specifically, in *In re Kim*, a bankruptcy trustee sought to

---

[6] The Court notes that the Bankruptcy Judge also relied on two Georgia cases to define a subscribing witness. *See Gilliam*, 151 S.E. at 653; *White*, 13 S.E. at 510. Both courts defined attestation. Neither court defined or discussed the meaning of a subscribing witness.

avoid a security deed as patently defective because the official witness's signature lacked proper notarization. 571 F.3d at 1344. The deed, like the Security Deed in this case, incorporated a notarized affidavit from the closing attorney. *Id.* at 1345–46. The affidavit was nearly the same as Mr. Smith's Affidavit here. It stated:

> In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions thereof . . . . After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights."

*Id.* The bankruptcy judge in *Kim* found this language only testified to the execution of the security deed and failed to address the issue of attestation. *Id.* at 1346. The Eleventh Circuit disagreed, holding that the language testified to both execution and attestation, thus satisfying Georgia's Remedial Statute. *Id.* at 1347. In reaching this conclusion, the Court of Appeals noted that the rider containing the affidavit was specifically incorporated into the security deed and filed contemporaneously with it. The court explained that "[b]y testifying to the execution of this particular Security Deed, which is part and parcel of the same Security Instrument recorded in the deed book, the closing attorney was in effect testifying that the Security Deed was executed by

Hong Ju Kim and witnessed by an unofficial witness and the closing attorney (the closing attorney was the notary public on the attestation page)." *Id.* at 1347. It further explained that, in the affidavit, the closing attorney "testified to a certain fact, and that fact was the execution of this particular Security Deed with its attestation; that fact, with its attestation detail, was clear and obvious a mere four pages earlier in the deed book recording of the single document comprising, *inter alia*, the Security Deed and the Affidavit." *Id.* Finally, the court held that — even if there was any doubt as to the meaning of the affidavit — it "certainly constitutes substantial compliance with the requirements of [Georgia's Remedial statute]" so as to provide notice of the lien to any subsequent bona fide purchaser. *Id.*

The Bankruptcy Judge correctly noted that the language in Mr. Smith's Affidavit is different from the *Kim* affidavit in one respect. Mr. Smith stated in the first sentence "I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed" whereas in *Kim* the lawyer made it clear that he provided that explanation (with no reference to another representative of his firm). The Bankruptcy Judge found this made all the difference. She

concluded "I or a representative of the firm" provided enough space that someone else from the firm could have explained the Security Deed ***and*** then witnessed the execution. As a result, the Bankruptcy Judge concluded Mr. Smith was not a subscribing witness because the Affidavit did not state he witnessed the deed's execution.

The Court disagrees with that interpretation. Certainly, the Affidavit suggests that either Mr. Smith or someone else explained the terms of the Security Deed to the Borrower. This does not suggest Mr. Smith was not also in the room but merely that someone else may have "done the talking." Nothing in the Affidavit suggests Mr. Smith was not present at the time to witness the Borrower's execution of the Security Deed. Mr. Smith did not write that he or another representative of his firm witnessed the execution. He simply wrote that "after said review with and explanation to Borrower[], Borrower[] executed the Security Deed." (Dkt. 4-3 at 28.)

That was the same language the Eleventh Circuit found in *Kim* to subscribe to both the execution and the attestation of the security deed. Mr. Smith's statement in the prior sentence that another representative of his firm may have reviewed the documents with the Borrower, does

not change the meaning of this sentence. Mr. Smith signed his name under the line stating that the Borrower executed the deed. One could not make that statement under oath without witnessing the execution of the document. The Court thus finds the Affidavit states Mr. Smith witnessed the execution of the deed, making him a subscribing witness.

This case is different from *Kim* in one other way. The Security Deed in this case is defective because it lacks a necessary attestation as Mr. Smith provided an acknowledgment (that was no longer permitted under Georgia law at the time) while the security deed in *Kim* contained an unnotarized attestation.[7] The Court concludes that difference also does not mandate a different outcome. In a footnote in *Kim*, the Eleventh Circuit stated, "[w]e are not holding that the attestation or the notary's seal on the Affidavit substitutes for the necessary attestation in the Security Deed. We are holding that the Affidavit meets the requirements under [O.C.G.A.] § 44–2–18 to cure a defective attestation and that the Affidavit *testifies to both the execution and the attestation* of the Security

---

[7] The Bankruptcy Judge noted this distinction between *Kim* and the case here — the difference between a defective attestation and no attestation. Because the Bankruptcy Judge found Mr. Smith was not a subscribing witness, she made no ruling on that distinction.

Deed as required by the statute." *Kim*, 571 F.3d at 1346 n.7 (emphasis added). The Court does not read this footnote to preclude application of Georgia's Remedial Statute to cure a defect that arises from an omitted attestation when the attorney who provides the curing affidavit acknowledged the borrower's signature at the time the security deed was executed.

The bankruptcy court in *In re Perry* considered a somewhat similar situation. 565 B.R. 442. The parties in that case executed a security deed when Georgia law still permitted acknowledgment as an alternative means for authentication. *Id.* at 444. The closing attorney's acknowledgment, however, was undated and thus defective. *Id.* at 446. At the time of the closing, the attorney also provided an affidavit identical to the one at issue in *Kim*. Relying on that decision, the bankruptcy court held the closing attorney's affidavit satisfied Georgia's remedial statute to cure the defective acknowledgment. But, the court also considered whether the attorney affidavit could provide an additional attestation.[8]

---

[8] The *Perry* court found "an affidavit cannot supplement a security deed to add a signature of an official witness who's (sic) signature is completely absent from the security deed." 565 B.R. at 448. This Court need not answer that question as Mr. Smith signed the Security Deed at issue, albeit as an acknowledgment.

It held that, because the same person signed both the faulty acknowledgment and the affidavit, the affidavit "substantially complies with the requirements of O.C.G.A. § 44–2–18 to cure any defect in attestation caused by her signature appearing under the term 'Acknowledgment.' " *Id.* at 449.

This Court reaches the same conclusion. The parties defined the Security Deed at issue here to include any Riders and expressly listed the "Acknowledgment Waiver Rider." (Dkt. 4-3 at 11, 12.). When the Borrower signed the Security Deed she agreed to accept the terms of any Rider executed by her and recorded with the Deed. (*Id.* at 23.) The Acknowledgment and Waiver Rider followed the Security Deed on the next page of the deed book, was executed on the same day as the Security Deed, and stated that it was "incorporated into and shall be deemed to amend and supplement" the Security Deed. (*Id.* at 26.) The Attorney Affidavit was the third page of that rider (having been numbered 3 of 3) and was filed in consecutive pages in the deed book. (*Id.* at 28.) There can be no doubt that the Attorney Affidavit was incorporated into the Security Deed. Mr. Smith signed and notarized the Security Deed on the page marked for an acknowledgment. (*Id.* at 24.) He also signed and

notarized the Borrower's execution of the Rider. (*Id*. at 27.) Finally, he signed the Attorney Affidavit and had is separately notarized. (*Id*. at 28.) There is an obvious chain of signatures by Mr. Smith on the same day from the Security Deed to the Attorney Affidavit. Under the holding of *Kim* and in agreement with the holding in *Perry*, the affidavit signed by Mr. Smith testified to both the execution and attestation of the Security Deed by the Borrower. It was also notarized as required by Georgia law.

To the extent the facts of this case do not fit squarely within *Kim* or *Perry*, the Court finds guidance and confidence in the same source as the Eleventh Circuit — Georgia's Remedial Statute's direction that "substantial compliance" with the statute is all that is necessary. Given the signatures of a Borrower and an unofficial witness on the Security Deed; the closing attorney's signature on the Acknowledgment; the Borrower's and two witnesses' signatures on the Rider; and the attorney's and notary's signatures on the Attorney Affidavit, any subsequent bona fide purchaser would have been aware of the lien created by the Security Deed.

## V. Conclusion

The Court **GRANTS** Appellants' Motion for Leave to Appeal (Dkt. 4-20). The Court **REVERSES** the Bankruptcy Judge's August 22, 2019, Order granting summary judgment in favor of Appellee (Dkt. 1-2) and **REMANDS** the case to the Bankruptcy Court to be continued under the guidance issued in this order.

**SO ORDERED** this 31st day of August, 2020.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE